**43 C.C.P.A.(Patents).**

### Matter of the Application of Karl F. MARX.

### Patent Appeal No. 6094.

United States Court of Customs and Patent Appeals.

April 18, 1956.

Arthur E. Fixel, Detroit, Mich. (Joseph Charles Walter, Washington, D. C., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (H. S. Miller, Washington, D. C., of counsel), for the Commissioner of Patents.

Before JOHNSON, Acting Chief Judge, and WORLEY and JACKSON (retired), Judges.

*JOHNSON, Acting Chief Judge.*

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the holding of the Primary Examiner rejecting as unpatentable over the prior art claim 3 of appellant's application for "Improvements in Dish Washers." Claims 4 and 5 were allowed.

The application discloses a dish washer of the automatic type having a housing which contains all of the components which are necessary for its operation. In the housing is mounted a cylindrical wire basket which is rotatable about a vertical axis, and is adapted to hold the dishes which are to be washed. A trough having one high wall and one low wall is affixed to the bottom of the housing. An oscillatable impeller blade is affixed to the housing in proximity to said trough. In operation, the housing is filled to a predetermined level with water. The water level is below the wire basket and below the high end of the trough. However, the low end of the trough is submerged to allow water to enter the trough. Suitable motor means cause said blade to oscillate relative to said high wall of the trough, and as the blade approaches the high wall, it causes water to spray upwardly and impinge on the dishes in the basket. Because of the location of the trough and basket relative to each other, the spray causes the basket to rotate when the dishes are struck by the water. In this manner, all of the dishes are sprayed with water as the basket rotates. Located almost directly below the basket is an inclined plate having one end thereof affixed to the bottom of the housing. The inclined plate is for the most part submerged in the water in the bottom of the housing, but it has one end projecting above the water level. Because of this construction, the plate

divides the water into two chambers. One chamber receives the dirty water which drains from the dishes. The spraying apparatus is located in the other chamber. An aperture is formed in the inclined plate, and this aperture is located approximately midway between the surface of the water and the bottom of the housing. During the washing operation, both fatty substances and sediment are separated from the dishes and fall into the chamber in which the spraying apparatus is not located. The fatty substances float on the water above the aperture. The sediment slides down the inclined plate to a position below the aperture. The water passing through the aperture is supplied to the spraying apparatus and is relatively clean because it is drawn from the zone intermediate the places where the fatty substances and the sediment are located. Because of the foregoing described arrangement, a predetermined small amount of water can be used for washing a batch of dirty dishes, thus obviating the necessity of supplying clean water to the dish washer during the washing operation.

Appealed claim 3 reads as follows:

"3. A dish washing machine comprising a tank adapted to contain a body of water, an open mesh basket inclosed therein and mounted for free rotation about a vertical axis, said basket adapted to contain dishes to be washed and located above the normal water level, and means in said tank for intermittently propelling a jet of said water into said basket in a tangential direction, means for returning water drained from said basket to said body of water, and a partition dividing said body of water into two portions from one of which water is supplied to said jet propelling device and into the other of which water is returned, said partition being inclined and provided with an opening located below normal water level and above the bottom of said tank."

The references relied on are:

Guignard (French),   549,291,   Nov. 15, 1922,
Lapicque (French),   558,533,   May 28, 1923.

The Lapicque patent discloses a dish washer having a cylindrical dish-holding wire basket which is adapted to rotate about a vertical axis. Located below the basket and to the side of its axis of rotation is a small chamber containing water. A driven "paddle wheel" is partially submerged in the water. Upon rotation of the "paddle wheel," water is projected on the dishes in the basket for the purpose of cleaning the dishes and for the further purpose of causing the basket to rotate, thus exposing other dishes to the water spray. The dirty water which drains from the dishes returns to the water chamber.

The Guignard patent relates to dish washing apparatus. It consists of an inclined pan which is adapted to contain a predetermined amount of water. Dishes which are to be washed are placed into the high end of the pan. The low end of the pan serves as a sump, and has a partially submerged bowl or trough placed therein. Located within the trough is a "curved paddle in the form of a spoon" which is adapted to project water on the dishes. A crank is operatively associated with the paddle for motivating the latter. During the dish washing operation, water, after having been projected on the dishes, flows toward the trough located in the low end of the pan, and enters the trough through holes in the bottom thereof. These holes act as a filter. In the patent the following is stated: "The water flows toward the bowl d and enters there through the bottom but not the residual matter which the filter prevents from passing nor the fatty substances which, lighter than water, remain on the surface of the latter in the pan outside the bowl." It is to be noted that the dishes remain stationary during the washing operation.

The Primary Examiner rejected claim 3 as being unpatentable over Lapique in view of Guignard. In his rejection, the examiner stated: "Lapique discloses all

the structure claimed except the separating means set forth in this claim. Guignard discloses 'means for preventing the return of sediment (grease etc.) and of floating material from drained water to a jet propelling means,' which separating means is considered the full patentable equivalent of applicant's separating means as set forth in this claim * * *. There would be no invention, broadly, in providing the means for returning water drained from the basket of Lapique with separating means such as shown by Guignard at d."

The Board of Appeals affirmed the examiner's rejection of claim 3, and stated in part:

" * * * The trough *d* of Guignard constitutes a separating means, in which the upper edges, extending above the liquid level, prevent the entrance of grease and floating matter, while the bottom of the trough, being spaced from the bottom of the tank and being provided with perforations or with a wire gauze, would effectively filter out solid residues. In our opinion there would be no invention involved, in following the teaching of Guignard, in providing a trough about the paddle wheel P of Lapicque, the bottom of the trough being perforated and spaced from the bottom of the hemispherical portion; and the upper edges of the trough extending above the liquid level, which combination, we believe, would produce no new, unobvious, or unexpected result. In re Bowen et al., 665 OG 984; [197 F.2d 553, 39 C.C.P.A., Patents, 1027], 94 USPQ 172."

On appellant's request for reconsideration the board adhered to its previous decision.

The question before us on appeal is whether claim 3 is unpatentable over the combination of references.

■ It is well settled that references may be combined to anticipate claims. In re DeLancey, 177 F.2d 377, 37 C.C. P.A.; Patents, 760; In re Williams, 223 F.2d 291, 42 C.C.P.A., Patents, 988. Furthermore, claims may be properly rejected on a combination of several patents taking specific features from each. In re Lindberg, 194 F.2d 732, 39 C.C. P.A., Patents, 866; In re Kamlet, 185 F.2d 709, 38 C.C.P.A., Patents, 776. It is not necessary that a complete disclosure be contained in a single reference. In re Streckert, 167 F.2d 1010, 35 C.C.P.A., Patents, 1148; In re Horney, 161 F.2d 271, 34 C.C.P.A., Patents, 968. However, when references are combined, it should be considered whether the references suggest doing the thing which an applicant has done. In re Fridolph, 134 F.2d 414, 30 C.C.P.A., Patents, 939; In re Williams, supra.

■ In the light of the foregoing law, we will now proceed to analyze the combination of the references. Both of the references relate to dish washing apparatus of the type wherein water is projected from a sump onto dishes. The Lapicque patent teaches that a rotatable wire basket containing dishes may be rotated and the dishes washed by water which is projected at the dishes by a suitable blade immersed in a sump. The Guignard patent teaches that water which has been exposed to grease and sediment may be reused for washing dishes. More specifically, in Guignard an opening in a trough is located beneath the water level of a sump so that grease which floats on the water cannot enter the opening. Furthermore, the opening, which is spaced from the bottom of the pan, prevents sediment from entering into the trough. We are of the opinion that since both patents relate to the same art, it would readily have occurred to one having cognizance of the features of the references that it might be desirable to advantageously use the water trough of Guignard in the apparatus of Lapicque for the purpose of preventing grease and sediment from being thrown back onto the dishes from which these elements were washed. We therefore conclude that the references were properly combined.

An analysis of claim 3 indicates to us that it does not define over the prior art, and is, therefore, unpatentable. We are in full agreement with the examiner that the trough of Guignard meets appellant's "partition for dividing said body of water into two portions * * *," as recited in the claim. Therefore, since the references have been properly combined, and since the references, as combined, meet the structure recited in the claim, it is our conclusion that claim 3 is unpatentable.

Appellant argues that in the Guignard patent a constant rain of water from the dishes plus other factors will keep the water in the sump in a turbulent condition, and thus cause a great part of the grease to be carried down to the filter in the trough and pass through it. In addition, it is argued that this turbulence will move sediment along the bottom of the Guignard apparatus and plug the filter. Appellant contends that the water in his own sump remains relatively quiescent, thus obviating the foregoing alleged shortcomings of the prior art. However, since the claim does not structurally define over the combined prior art the portion of appellant's structure which is capable of performing the allegedly superior function, we are not persuaded by appellant's argument.

We have carefully considered appellant's arguments presented in both the main and supplemental briefs. However, for the foregoing reasons, we are of the opinion that the decision appealed from is sound and should be affirmed.

Affirmed.

JACKSON, Judge, retired, recalled to participate.

O'CONNELL and COLE, JJ., because of illness, did not participate in the hearing or decision of this case.